Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| AZAIAH BAYNARD, <br><br> Plaintiff, <br><br> v. <br><br> MEREDITH MONA and JOSEPH SAPIENZA, <br><br> Defendants. | Civil Action No.: 20-7723 (ES) (CLW) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court are Defendants Meredith Mona and Detective Joseph Sapienza's separately filed motions to dismiss Plaintiff Azaiah Baynard's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. Nos. 5 & 22). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' motions are GRANTED.

## I.   BACKGROUND

This case arises from Baynard's arrest and prosecution for a crime he says he did not commit. As alleged in the Complaint, Deon Merchant was shot several times on June 30, 2018, at approximately 11:00 p.m., by an unknown individual in the area of 432 Leslie Street, Newark, New Jersey. (D.E. No. 1 ("Compl.") ¶ 11). According to Baynard, Merchant identified him as the shooter through a "tainted identification process." (*Id.* ¶ 16). Merchant's identification led to Baynard's arrest.

1

Detective Sapienza prepared an affidavit of probable cause for his arrest for the shooting. (*Id.* ¶ 15). The affidavit states the following:[1]

> I am a Detective assigned to the Newark Police Department Shooting Response Team. I am responsible for the investigation detailed hereinafter involving a shooting incident. On 6/30/18 a male was shot in the chest, arm, and leg and was transported via privately owned automobile to Newark Beth Israel. This male was rushed into emergency surgery where he went into cardiac arrest twice during the surgery and life saving measures were performed to save his life.
>
> Surveillance video was retrieved from the area. On 7/3/18 I was able to obtain a sworn audio statement from the victim who advised me he was standing in front of 432 Leslie Street when a male clad in a hooded sweatshirt, walked up to him, yelled out "Yo!", took off the hood, looked at him, and discharged a handgun several times striking him multiple times. The victim stated he was transported to NBIMC where he was rushed into emergency surgery and "died" twice on the operating table. The victim also provided a physical description of the male. The victim knows where the male lives and stated he sees him outside this house everyday. The victim also knows the male drives a blue mini van and recently died the tips of his dreadlocks blonde however, he does not know his name. Detective Pisano and I then drove pass 315 Wainwright which is the residence identified by the victim where the suspect lives. Parked in the driveway was a Blue mini-van. The license plate was recorded. Upon returning to our office, the license plate was ran and the vehicle was checked for moving violations. One such male was found to have numerous moving violations issued to him in this vehicle. This male, Azaiah Baynard was then placed in a photo array. A photo array was then shown to the victim who positively identified Baynard as the male who shot him.

---

[1] The Court may rely on the criminal complaint/warrant that was issued against Baynard, and the affidavit of probable cause that was prepared by Detective Sapienza. (D.E. No. 22-4, Exhibit A, at 2–3 ("Crim. Compl.") & 4–5 ("Aff. of Probable Cause") (ECF pagination)). Though Baynard did not attach those documents to his Complaint, his Complaint explicitly relies on their contents, his claims are based on them, and he does not dispute their authenticity. *See, e.g.*, *Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) (collecting cases); *see also Bridges v. Torres*, 809 F. App'x 69, 71 (3d Cir. 2020) (considering an application for a search warrant when assessing the sufficiency of a complaint); *Est. of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019) (explaining courts may "consider documents that a defendant attaches as an exhibit to a motion to dismiss if they are undisputedly authentic and the plaintiff's claims are based on them" (cleaned up)). Importantly, the Court relies on those documents only to establish the allegations against Baynard. The Court does not accept those allegations as true.

> Additional video surveillance was obtained from Wainwright Street which shows the same mini van which Baynard is known to operate driving down the block a few minutes after the shooting.
>
> It should be noted I was able to confirm with the Doctors of Newark Beth Israel that the victim did in fact go into cardiac arrest several times during his surgery.

(Aff. of Probable Cause).

Baynard alleges that the affidavit of probable cause omitted that Merchant:

- at the time of the shooting, was not wearing his corrective lenses and was under the influence of opioids;

- during the interview, was in the hospital under the influence of opioids and physically and mentally impaired due to his injuries; and

- during the interview, told Detective Sapienza that he could not indicate the length of the shooter's dreadlocks, give a full description of the shooter's face, or specify whether the shooter had facial hair, distinguishing features on his face, identifying marks on his body, or gold-tinted tips on his dreadlocks.

(Compl. ¶¶ 12, 16 & 18–19). Baynard further alleges that, at the time of the shooting, he was home with his girlfriend, sister, and sister's friend. (*Id.* ¶ 14).

Based on the affidavit of probable cause, Judicial Officer Wanda Nieves signed a criminal complaint and arrest warrant for Baynard. (Crim. Compl.). And on July 5, 2018, Baynard was arrested for and charged with attempted murder, aggravated assault, unlawful possession of a handgun, and possession of a weapon for unlawful purposes. (Compl. ¶ 13). He was held without bail. (*Id.* ¶ 17).

Baynard alleges that, after his arrest, his attorney provided a list of alibi witnesses to Mona, an assistant prosecutor of the Essex County Prosecutor's Office who was assigned to the case. (*Id.* ¶ 21). Though the Complaint does not specify who was on the list, the list ostensibly included his girlfriend, sister, and sister's friend—because they are the only alibi witnesses identified in the Complaint. (*Id.* ¶ 14). Baynard alleges that Mona did not interview any of the witnesses. (*Id.* ¶

3

21). Baynard further alleges that Mona was aware of the issues concerning Merchant's identification of him as the shooter and of the issues concerning the affidavit of probable cause that Detective Sapienza prepared to secure the criminal complaint and arrest warrant. (*Id.* ¶ 26). Notwithstanding, says Baynard, Mona presented the case against him to a grand jury, allegedly omitting the issues concerning the identification and the existence of the alibi witnesses, and secured an indictment. (*Id.*). Sometime after the indictment, a new assistant prosecutor was assigned to the case. (*Id.* ¶ 27). That prosecutor dismissed the charges against Baynard on July 22, 2019. (*Id.*). Baynard spent a little over a year in jail. (*Id.* ¶ 28).

On June 24, 2020, Baynard filed suit against Mona and Detective Sapienza for malicious prosecution, malicious use and abuse of process, false arrest, and false imprisonment under 42 U.S.C. § 1983; and for conspiracy to violate his civil rights under 42 U.S.C. § 1985. (*Id.* ¶¶ 27–57). Defendants separately move to dismiss the Complaint. Baynard consents to withdrawing his § 1985 claim. (D.E. No. 12 ("Opp. to Mona") at 8[2]; D.E. No. 29 ("Opp. to Sapienza") at 14). The Court therefore dismisses that claim without further discussion.

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

---

[2] For this document, the Court relies on pagination automatically generated by CM/ECF.

and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.  DISCUSSION

Mona argues that she is entitled to prosecutorial immunity because Baynard's claims against her arise only from actions she took in her prosecutorial capacity. (D.E. No. 5-1 ("Mona Mov. Br.") at 18–24). Detective Sapienza argues that Baynard's claims for malicious prosecution, false arrest, and false imprisonment are insufficiently pleaded because the Complaint fails to negate probable cause to arrest—an element shared by those three claims. (D.E. No. 22-12 ("Sapienza Mov. Br.") at 19–23). Detective Sapienza further argues that Baynard has not identified any process that was misused or abused, a necessary element for Baynard's claim of malicious use and abuse of process. (Sapienza Mov. Br. at 14). The Court agrees and addresses each argument in turn.[3]

### A.  Prosecutorial Immunity

A prosecutor has "varying levels of official immunity" from damages actions under 42 U.S.C. § 1983. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). A prosecutor has absolute immunity for "all actions performed in a 'quasi-judicial' role." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Thus, a prosecutor is absolutely immune for "activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." *Id.* (quoting *Imbler*, 424 U.S. at 430). Meanwhile, a prosecutor has only qualified immunity for actions she takes "in

---

[3]   In light of the below ruling, the Court does not reach Defendants' other arguments for dismissal.

5

an investigative or administrative capacity." *Id.* In determining the level of immunity, a court must conduct a functional inquiry, focusing on "the nature of the function performed, not the identity of the actor who performed it." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (quoting *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (quoting *Light v. Haws*, 472 F.3d 74, 78 (3d Cir. 2007))). "Th[is] functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle v. Sokol*, 957 F.3d 148, 159–60 (3d Cir. 2020) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). In determining the function performed by the prosecutor, a court must engage in a "meticulous analysis" of the precise act or omission of which the plaintiff complains. *See Odd*, 538 F.3d at 208 (quoting *Light*, 472 F.3d at 79).

Baynard complains that Mona (i) failed to interview his alibi witnesses before presenting the State's case against Baynard to the grand jury, (ii) presented the case to the grand jury knowing Detective Sapienza did not have probable cause to arrest, and (iii) failed to offer the grand jury exculpatory evidence. (Compl. ¶¶ 21 & 26). Mona argues she is entitled to prosecutorial immunity because each act/omission falls "within the core prosecutorial functions." (Mona Mov. Br. at 22–24). Baynard responds that Mona's acts/omissions were investigatory. (Opp. to Mona at 7). The Court agrees with Mona.

Baynard's latter two claims—contesting the fact that Mona presented the case to the grand jury and the manner in which she did so—concern actions Mona took as the State's advocate as part of the judicial phase of a criminal prosecution. "The decision to initiate a prosecution," the Third Circuit has said, "is at the core of a prosecutor's judicial role." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). And "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). Moreover,

absolute immunity applies even when a prosecutor "fail[s] to report . . . alleged inconsistencies [in the evidence] while 'appearing before a judge and presenting evidence," because doing so "involves the [prosecutor's] conduct as advocate[]" for the state. *Fogle*, 957 F.3d at 162 (quoting *Burns*, 500 U.S. at 491)). This principle applies in the context of a grand jury. Indeed, courts have explained, a prosecutor is "absolutely immune for [the] decision[] to withhold exculpatory evidence . . . during presentment to the Grand Jury." *E.g.*, *Frost v. Cty. of Monmouth*, No. 17-4395, 2018 WL 1469055, at *7 (D.N.J. Mar. 26, 2018).

As for Mona's decision not to interview Baynard's alibi witnesses, the Court finds that decision, as pleaded in the Complaint, was made in her capacity as an advocate for the State. As alleged in the Complaint, it appears Mona became involved in the case only after Detective Sapienza secured a criminal complaint and an arrest warrant against Baynard. There are no facts in the Complaint indicating that Mona was involved in the pre-arrest investigation of the attempted murder.[4] Thus, by the time Mona became involved, Baynard had already been arrested. Mona's task, then, was to determine whether to proceed with a criminal prosecution against Baynard, a decision intimately associated with the judicial process. During this time, Baynard's counsel sent Mona a list of alibi witnesses. But Mona allegedly proceeded anyway, without interviewing those witnesses, and she secured a grand jury indictment against Baynard. Whatever her reasons for not interviewing the alibi witnesses, her decision not to was made in her capacity as an advocate for the State. The Third Circuit has previously indicated that "instituting grand jury proceedings without investigation" is "clearly . . . encompassed by the immunity doctrine as 'intimately associated with the judicial phase of the criminal process.'" *Rose v. Bartle*, 871 F.2d 331, 347

---

[4] This case is thus unlike *Fogle*, 957 F.3d 148, where the Third Circuit held that a post-arrest interview was not protected under the prosecutor's absolute immunity because "the interview occurred at the end of a long chain of investigative events led, or supervised, by" the prosecutor. *Id.* at 163.

7

n.12 (3d Cir. 1989).  Though each case must be taken on its own facts, other case law supports this conclusion.  As the Supreme Court has said, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."  *Id.*; *see also Kulwicki*, 969 F.2d at 1465 ("Immunity extends to 'the preparation necessary to present a case,' and this includes the 'obtaining, reviewing, and evaluation of evidence.'" (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414 (3d Cir. 1991))); *Est. of Bardzell v. Gomperts*, No. 20-4555, 2021 WL 288090, at *9 (D.N.J. Jan. 27, 2021) ("[T]he decision not to investigate is 'sufficiently closely related' to the decision not to prosecute so as to qualify defendant [prosecutor's] decision for absolute immunity." (quoting *Woolfolk v. Thomas*, 725 F. Supp. 1281, 1283 (N.D.N.Y. 1989))); *Dennis v. Evans*, No. 09-0656, 2011 WL 900911, at *13 (M.D. Pa. Feb. 2, 2011) ("Because plaintiff complains of defendant Kacmarski's inadequate investigation resulting in her decision to prosecute, the court finds that she is entitled to prosecutorial immunity."), *report and recommendation adopted*, 2011 WL 901187 (M.D. Pa. Mar. 14, 2011).  Accordingly, Mona is absolutely immune from suit for claims premised on her decision not to investigate the alibi witnesses.

    **B.**    **Probable Cause**

As noted, Baynard asserts claims of malicious prosecution, false arrest, and false imprisonment.  Each claim shares one element—that is, a lack of probable cause.  *See Harvard v. Cesnalis*, 973 F.3d 190, 199–203 (2020) (analyzing probable cause for claims of false arrest, false

8

imprisonment, and malicious prosecutions); *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (same).

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Harvard*, 973 F.3d at 199 (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). "Put another way, 'probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Dempsey*, 834 F.3d at 467 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). A court must assess probable cause to arrest based on the totality of the circumstances known by the officer at the time he drafted the affidavit of probable cause. *Harvard*, 973 F.3d at 200, 202 n.4.[5] An officer who prepares an affidavit of probable cause "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Dempsey*, 834 F.3d at 469 (quoting *Wilson*, 212 F.3d at 790). When a plaintiff's challenge to probable cause rests on an officer asserting or omitting information in an affidavit of probable cause, a court must (i) determine whether such "information was asserted or omitted . . . with at least reckless disregard for the truth"; and (ii) if so, "perform a word-by-word reconstruction of the affidavit" to determine whether the disputed information was material. *Id.* at 470.

On a motion to dismiss, the plaintiff must plead more than just that there was a lack of probable cause. *See Jecrois v. Sojak*, 736 F. App'x 343, 347 (3d Cir. 2018) (reversing denial of

---

[5] The Court thus does not consider Baynard's contention that "Detective Sapienza consciously decided **not** to interview several known eyewitnesses to the shooting (or attempt to locate others who may have been present) who all later confirmed that Plaintiff was not the shooter." (Opp. to Sapienza at 8). The Complaint contains no information concerning the existence of eyewitnesses *to* the shooting. In support of his contentions, Baynard relies on Detective Sapienza's investigation notes. (*Id.* (citing D.E. No. 29-1, Exhibit A)). However, unlike the criminal complaint/warrant and affidavit of probable cause, those notes are not explicitly relied upon in the Complaint. Nor do the notes form the basis of Baynard's claims. The Court thus cannot consider the notes. Moreover, the Complaint does not claim that Detective Sapienza was aware of any alibi witnesses prior to filling out and submitting the affidavit of probable cause.

9

motion of to dismiss because a reconstructed affidavit supported probable cause); *Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 224 (3d Cir. 2016) (affirming dismissal of false arrest and false imprisonment claims under Rule 12(b)(6) for failure to negate probable cause); *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 115 (3d Cir. 2016) (same); *Sampson v. Pierro*, No. 14-5983, 2017 WL 1032517, at *3 (D.N.J. Mar. 16, 2017) (dismissing claim for false arrest for failing negate probable cause). The plaintiff must offer facts and circumstances plausibly suggesting there was not probable cause to arrest. *Shaffer*, 650 F. App'x at 115.

Detective Sapienza argues, and the Court agrees, that Baynard fails to so plead. (Sapienza's Mov. Br. at 19). As noted above, Baynard alleges that the affidavit of probable cause omitted that Merchant:

- at the time of the shooting, was not wearing his corrective lenses and was under the influence of opioids;

- during the interview, was in the hospital under the influence of opioids and physically and mentally impaired due to his injuries; and

- during the interview, told Detective Sapienza that he could not indicate the length of the shooter's dreadlocks, give a full description of the shooter's face, or specify whether the shooter had facial hair, distinguishing features on his face, identifying marks on his body, or gold-tinted tips on his dreadlocks.

(Compl. ¶¶ 12, 16 & 18–19). Assuming, without finding, that the Complaint plausibly alleges that Detective Sapienza omitted the above information with the requisite mental state, the Court finds the disputed information was not material. *See Shaffer*, 650 F. App'x at 114 (assuming the same on a motion to dismiss and proceeding to the second element).

The Court thus proceeds to conduct the word-by-word reconstruction of the affidavit of probable cause. Before doing so, the Court notes that the parties did not perform the proper word-by-word reconstruction. However, the Court "must" do so—in light of the Third Circuit's clear instruction on this issue. *See Dempsey*, 834 F.3d at 470 ("Recognizing, however, that our

instruction has not been interpreted consistently as an explicit requirement, we now clarify that when a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit."); *see also Jecrois v. Sojak*, 736 F. App'x 343, 347 (3d Cir. 2018) (reversing denial of motion of to dismiss because a reconstructed affidavit supported probable cause).  A word-by-word reconstruction of the affidavit produces the following:

> I am a Detective assigned to the Newark Police Department Shooting Response Team.  I am responsible for the investigation detailed hereinafter involving a shooting incident.  On 6/30/18 a male was shot in the chest, arm, and leg and was transported via privately owned automobile to Newark Beth Israel.  This male was rushed into emergency surgery where he went into cardiac arrest twice during the surgery and life saving measures were performed to save his life.
>
> Surveillance video was retrieved from the area.  On 7/3/18 I was able to obtain a sworn audio statement from the victim**[. At the time of the interview, the victim was still in the hospital, recovering from his injuries. During the interview, the victim was high on opioids and physically and mentally impaired from his injuries.]** ~~who~~ **[The victim]** advised me he was standing in front of 432 Leslie Street when a male clad in a hooded sweatshirt, walked up to him, yelled out "Yo!", took off the hood, looked at him, and discharged a handgun several times striking him multiple times.  The victim stated he was transported to NBIMC where he was rushed into emergency surgery and "died" twice on the operating table.  **[At the time of the shooting, it was dark out and the victim was not wearing his corrective lenses and was under the influence of opioids.]** The victim also provided a physical description of the male.  **[However, the victim could not indicate the length of the shooter's dreadlocks, give a full description of the shooter's face, or specify whether the shooter had facial hair, distinguishing features on his face, or identifying marks on his body.]** The victim knows where the male lives and stated he sees him outside this house everyday.  The victim also knows the male drives a blue mini van ~~and recently died the tips of his dreadlocks blonde~~ however, he does not know his name.  Detective Pisano and I then drove pass 315 Wainwright which is the residence identified by the victim where the suspect lives.  Parked in the driveway was a Blue mini-van.  The license plate was recorded.  Upon returning to our

11

> office, the license plate was ran and the vehicle was checked for moving violations. One such male was found to have numerous moving violations issued to him in this vehicle. This male, Azaiah Baynard was then placed in a photo array. A photo array was then shown to the victim who positively identified Baynard as the male who shot him. **[Baynard has gold-tinted tips on his dreadlocks, and the victim could not indicate whether the shooter had gold-tinted tips on his dreadlocks during my initial interview of him.]**
>
> Additional video surveillance was obtained from Wainwright Street which shows the same mini van which Baynard is known to operate driving down the block a few minutes after the shooting.
>
> It should be noted I was able to confirm with the Doctors of Newark Beth Israel that the victim did in fact go into cardiac arrest several times during his surgery.

(Aff. of Probable Cause (emphasis, additions, and alterations added)).

In light of this new information, Baynard argues there was no probable cause to arrest him because Merchant's identification was unreliable. (Opp. to Sapienza at 7–10). According to Baynard, Merchant is a known opioid user and criminal; he was under the influence of opioids when he was shot and later interviewed by Detective Sapienza; the shooting occurred at nighttime; and Merchant could not fully detail the shooter's physical characteristics. (*Id.* at 8–9).

However, those new facts, when included in the affidavit, do not plausibly negate probable cause. For starters, "[s]tatements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists." *Dempsey*, 834 F.3d at 477–48. "When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Id.* at 448 (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)). The Third Circuit has upheld probable cause "where a victim identified the arrestee in a photo array, but other evidence suggested the perpetrator was significantly taller than the arrestee, a different victim did not identify the arrestee, and another

12

witness claimed to have seen the arrestee at the time of the crime," *id.* (citing *Wilson*, 212 F.3d at 791–92), and "where a victim first identified a different person as her assailant before changing her story to identify the arrestee," *id.* (citing *Sharrar*, 128 F.3d at 818–19). "[S]ome unreliability or exculpatory evidence will not fatally undermine probable cause otherwise established." *Id.* (cleaned up).

Baynard alleges no more than "some unreliability." While the nighttime conditions of the shooting, Merchant's intoxication at the time of the shooting and the interview,[6] and Merchant's failure to fully detail Baynard's physical characteristics[7] plausibly render his identification less reliable, probable cause must be assessed under the totality of the circumstances. And as outlined in the affidavit of probable cause, the police corroborated some of Merchant's statements, rendering his statements more reliable than a typical victim. The police did so by going to the address provided by Merchant and observing a blue minivan parked in the driveway, discovering that the blue minivan was linked to Baynard, uncovering surveillance footage showing the same blue minivan in the area of the shooting around the time of the shooting, and obtaining an identification from Merchant of Baynard in a photo array. *See Bridges*, 809 F. App'x at 72 (affirming dismissal of Fourth Amendment claim on motion to dismiss for failure to negate probable cause supporting a search warrant, which was based on a confidential informant, where the "affidavit provided corroborating evidence"). Baynard does not contest that the police

---

[6] *See Norales v. Acevedo*, No. 20-2044, 2021 WL 739111, at *6 (S.D.N.Y. Feb. 24, 2021) ("An officer's knowledge that a witness to a crime may have lied in the past, even about the person who is arrested, and that the witness was under the influence of drugs or alcohol at the time of the crime, does not mean that the officer cannot rely on the witness in determining whether there is probable cause to make an arrest."); *United States v. McCottrell*, No. 18-1006, 2020 WL 2559650, at *5 (E.D. Mo. Mar. 18, 2020) ("Even if C.C. was under the influence of heroin during her initial statement, text messages and toll information in C.C.'s phone corroborated her statement about her contact with T."), *report and recommendation adopted*, 2020 WL 2557030 (E.D. Mo. May 20, 2020).

[7] *Wilson*, 212 F.3d at 791 (upholding probable cause even though the victim's "testimony should be viewed with some skepticism because her identification of Wilson was inherently incompatible with her description of the robber").

corroborated those statements. Thus, under the totality of the circumstances, Baynard does not allege sufficient facts fatally undermining Merchant's reliability.

Accordingly, because the Complaint does not plausibly negate probable cause, the Court dismisses the malicious prosecution, false arrest, and false imprisonment claims.

### C.     Malicious Use and Abuse of Process

Detective Sapienza argues the Complaint fails to plausibly plead a claim for malicious use and abuse of process because that claim applies only to process in the civil context—it does not apply to process in the criminal context. (Sapienza Mov. Br. at 12–14). However, Baynard correctly points out that "[a]n abuse of process is by definition a denial of procedural due process." (Opp. to Sapienza at 7 (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977)). Thus, "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose*, 871 F.2d at 350 n.17 (quoting *Jennings*, 567 F.2d at 1217). While Detective Sapienza argues that *Jennings* and related cases were based on Pennsylvania common law (D.E. No. 30, Reply at 1–2), he does not account for cases assessing the sufficiency of similar claims arising from arrests that occurred in New Jersey. *See Dunne v. Twp. of Springfield*, 500 F. App'x 136, 138–39 (3d Cir. 2012); *Coles v. Carlini*, 162 F. Supp. 3d 380, 403 n.12 (D.N.J. 2015). Therefore, this claim cannot be dismissed because the alleged abuse of process was committed in the criminal context.

Nor can this claim be dismissed because Baynard failed to plausibly plead there was no probable cause for his arrest. Indeed, "the gravamen of a malicious abuse of process claim is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Dunne*, 500 F. App'x at 139 (cleaned up).

14

However, the Court agrees with Detective Sapienza that Baynard has not identified any process that was misused or abused. (Sapienza Mov. Br. at 14). Indeed, Baynard does not indicate how Detective Sapienza engaged in the "perversion of . . . process" after he was arrested and charged. *See Jennings*, 567 F.2d at 1218 (citation omitted); *see also Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014) ("Her allegations that Steffen wrongfully arrested her do not describe an abuse of process. Because Gebhart makes no allegations that Steffen participated in the proceedings after he initiated them, her claim against Steffen fails at the start." (internal citation omitted)); *Stevens v. Sullum*, No. 20-1911, 2021 WL 2784817, at *8 (M.D. Pa. July 2, 2021) ("Plaintiff fails to point to the clear 'perversion' of the legal process that furthered such an illicit purpose after the proceedings were commenced."); *Coles*, 162 F. Supp. 3d at 403 n.12 ("However, nowhere does Plaintiff allege that there was a 'perversion of a process after [summons was] issued.'" (quoting *Jennings*, 567 F.2d at 1218)). While he alleges that "Defendants continued to falsely testify against Plaintiff[] at the criminal trial," that allegation is contradicted by the fact his Complaint dispels there was a criminal trial. (Compl. ¶¶ 27 & 36). Moreover, Baynard does not specify which defendant testified, what that defendant or those defendants said, and how the testimony was false. The Court therefore dismisses Baynard's claim for malicious use and abuse of process.

### IV. CONCLUSION

Based on the foregoing, Defendants Mona and Detective Sapienza's motions to dismiss (D.E. Nos. 5 & 22) are GRANTED. The dismissal is *without prejudice* to Baynard to amend his Complaint to cure the deficiencies outlined above. An appropriate Order accompanies this Opinion.

Dated: September 30, 2021

/s/Esther Salas
Esther Salas, U.S.D.J.

15