Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AZAIAH BAYNARD,**<br><br>Plaintiff,<br><br>v.<br><br>**JOSEPH SAPIENZA,**<br><br>Defendant. | Civil Action No.: 20-7723 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Detective Joseph Sapienza's motion to dismiss Plaintiff Azaiah Baynard's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 51). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's motion is GRANTED. The Amended Complaint is dismissed *without prejudice*.

**I.  BACKGROUND**

**A.  Factual Allegations**

This case arises from Baynard's arrest and prosecution for a crime, he says, he did not commit. As alleged in the Amended Complaint, a man named Deon Merchant was shot several times on June 30, 2018, at approximately 11:00 p.m., by an individual in the area of 432 Leslie Street, Newark, New Jersey. (D.E. No. 45 ("Am. Compl.") ¶ 9). On July 5, 2018, Detective Sapienza secured a warrant for Baynard's arrest after he submitted the following affidavit of probable cause to a judicial officer:

> I am a Detective assigned to the Newark Police Department Shooting Response Team. I am responsible for the investigation detailed hereinafter involving a shooting incident. On 6/30/18 a

> male was shot in the chest, arm, and leg and was transported via privately owned automobile to Newark Beth Israel.  This male was rushed into emergency surgery where he went into cardiac arrest twice during the surgery and life saving measures were performed to save his life.
>
> Surveillance video was retrieved from the area.  On 7/3/18 I was able to obtain a sworn audio statement from the victim who advised me he was standing in front of 432 Leslie Street when a male clad in a hooded sweatshirt, walked up to him, yelled out "Yo!", took off the hood, looked at him, and discharged a handgun several times striking him multiple times.  The victim stated he was transported to NBIMC where he was rushed into emergency surgery and "died" twice on the operating table.  The victim also provided a physical description of the male.  The victim knows where the male lives and stated he sees him outside this house everyday.  The victim also knows the male drives a blue mini van and recently died the tips of his dreadlocks blonde however, he does not know his name.  Detective Pisano and I then drove pass 315 Wainwright which is the residence identified by the victim where the suspect lives.  Parked in the driveway was a Blue mini-van.  The license plate was recorded.  Upon returning to our office, the license plate was ran and the vehicle was checked for moving violations.  One such male was found to have numerous moving violations issued to him in this vehicle.  This male, Azaiah Baynard was then placed in a photo array.  A photo array was then shown to the victim who positively identified Baynard as the male who shot him.
>
> Additional video surveillance was obtained from Wainwright Street which shows the same mini van which Baynard is known to operate driving down the block a few minutes after the shooting.
>
> It should be noted I was able to confirm with the Doctors of Newark Beth Israel that the victim did in fact go into cardiac arrest several times during his surgery.

(D.E. No. 51-7, Ex. F at 4–5 ("Aff. of Probable Cause")).[1]  That same day, Baynard was arrested and then charged with attempted murder, aggravated assault with a deadly weapon, unlawful

---

[1] On this procedural posture, the Court may rely on the affidavit of probable cause that was prepared by Detective Sapienza because, even though Baynard did not attach the affidavit to his Amended Complaint, his Amended Complaint explicitly relies on its contents, his claims are based on it, and he does not dispute its authenticity. *See, e.g.*, *Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) (collecting cases); *see also Bridges v. Torres*, 809 F. App'x 69, 71 (3d Cir. 2020) (considering an application for a search warrant when assessing the sufficiency of

possession of a handgun, and possession of a weapon for unlawful purposes. (Am. Compl. ¶¶ 61 & 64).

However, Baynard alleges that Detective Sapienza knowingly omitted from the affidavit of probable cause several aspects of Merchant's identification that render it unreliable. (*Id.* ¶¶ 61–63). First, Merchant was under the influence of opioids during the shooting, the initial interview, and the later identification. (*Id.* ¶¶ 23, 53 & 63). Second, Merchant told Detective Sapienza that, at the time of the shooting, he was not wearing his contact lenses and it was dark outside. (*Id.* ¶¶ 30, 35, 41 & 63). Third, Merchant told Detective Sapienza that, at the time of the shooting, he saw flashing lights after the shooter screamed "Yo!" and could not see the shooter's face—but then later told Detective Sapienza that he had seen the shooter around his house but could not make out the full details of the shooter's face, including whether the shooter had facial hair or any other distinguishing features. (*Id.* ¶¶ 26, 30, 32, 36–41 & 63). Fourth, Merchant believed the shooter was "skinny" and weighed approximately "145 pounds," even though Baynard weighed over 180 pounds. (*Id.* ¶¶ 33–34 & 63). Fifth, Merchant believed the shooter was "brown," even though Baynard is Black. (*Id.* ¶¶ 30–31 & 63). Sixth, Merchant gave inconsistent statements concerning how many times he believed he was shot. (*Id.* ¶¶ 27–28). Seventh, Merchant told Detective Sapienza that he did not want his "statement used in court." (*Id.* ¶ 46).

Baynard further alleges that Detective Sapienza was unduly suggestive during the initial interview and subsequent photo array identification. (*Id.* ¶¶ 24, 54, 70 & 76). Detective Sapienza, Baynard claims, asked questions of Merchant until satisfied with the answer and fed Merchant information about the suspected shooter, including that the shooter wore a hoodie and dreadlocks.

---

a complaint); *Est. of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019) (explaining courts may "consider documents that a defendant attaches as an exhibit to a motion to dismiss if they are undisputedly authentic and the plaintiff's claims are based on them" (cleaned up)). Importantly, the Court relies on the affidavit only as it relates to the allegations against Baynard. The Court does not accept those allegations as true.

(*Id.* ¶¶ 29, 37–39 & 41). And the photo array, according to Baynard, effectively singled him out as the shooter. (*Id.* ¶ 60). The photo array depicted six individuals. (*Id.* ¶ 52). Baynard alleges that he was the only person in the photo array who had dreadlocks at chin length and who matched the height description provided by Merchant. (*Id.* ¶¶ 55–58). Baynard further alleges that he was one of two individuals who were Black, whereas the other four had brown skin. (*Id.* ¶ 59).[2]

Baynard claims that the affidavit of probable cause omitted other exculpatory facts of which Detective Sapienza was aware. First, at the hospital, Detective Sapienza interviewed a man named Kelvin Barnes, who was present at the time of the shooting yet unable to identify the shooter. (*Id.* ¶¶ 19 & 21). Second, at the hospital, Detective Sapienza also interviewed a man named Anthony Greene, who drove Merchant to the hospital. (*Id.* ¶¶ 19–20). Greene informed Detective Sapienza that he did not know Merchant and was not present at the shooting, even though Merchant told Detective Sapienza that he was friends with Greene and that Greene was present at the time of the shooting. (*Id.* ¶¶ 25 & 63). Third, while canvassing the area around Baynard's home, Detective Sapienza "located a camera affixed to 330 Wainwright Street owned by Harrison Green who permitted [Detective] Sapienza to download 'several clips.'" (*Id.* ¶ 48). Baynard claims that the clips, "upon information and belief, demonstrate that [he] was at home at the time of Merchant's shooting." (*Id.*). Fourth, "[u]pon information and belief, Detective Sapienza also

---

[2] As detailed below, Baynard's allegations concerning the photo array are flatly contradicted by the photo array itself and the findings of the Superior Court of New Jersey. (D.E. No. 51-5, Ex. D ("Photo Array") at 6; D.E. No. 51-6, Ex. E, Feb. 15, 2019 Transcript of Wade Hearing ("Wade Hearing") at 10:7–14). The Court may take judicial notice of the photo array because it is "integral to or explicitly relied upon" in Baynard's Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). The Court may take judicial notice of the Superior Court proceedings because "[publicly] available court transcripts which have a bearing on the controversy at issue are one such type of document which may be considered without converting a motion to dismiss into one for summary judgment." *Ojo v. Luong*, No. 14-4347, 2016 WL 1337274, at *4 (D.N.J. Apr. 5, 2016) (citing *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). And "the Court need not accept as true allegations that contradict matters properly subject to judicial notice or exhibit." *Garcia v. New Jersey State Prison*, No. 05-3159, 2007 WL 2669332, at *1 (D.N.J. Sept. 6, 2007); *see also Lopez v. Howard*, No. 06-2361, 2007 WL 708989, at *1 (3d Cir. Mar. 9, 2007) (taking "judicial notice of records from the Delaware Supreme Court that contradict[ed] Lopez's perfunctory allegations").

4

obtained video footage of Merchant's shooting which seriously called Merchant's identification into question." (*Id.* ¶ 49).

After Baynard's arrest, the case was initially referred to Assistant Prosecutor Meredith Mona. (*Id.* ¶ 61). She declined to dismiss and continued to investigate the matter despite, Baynard alleges, knowing that Merchant's out-of-court identification was unreliable and that Merchant refused to testify against Baynard. (*Id.* ¶¶ 67–72). At some point, Baynard moved to suppress Merchant's out-of-court identification and moved to dismiss the indictment. On February 25, 2019, the Superior Court of New Jersey denied Baynard's motion to suppress, for failure to show undue suggestibility, and his motion to dismiss, for the reasons expressed on the record. (D.E. No. 51-6, Ex. 6, Order).

On July 23, 2019, the charges against Baynard were dismissed after a new assistant prosecutor was assigned to the matter. (Am. Compl. ¶¶ 73–76). The new prosecutor recommended that the Superior Court dismiss the charges because "[t]here is no evidence outside of [Merchant]'s identification to present at trial" and Merchant "repeatedly" said he "will not testify." (D.E. No. 51-9, Ex. H, Recommendation at 2).[3] Therefore, the new prosecutor concluded the "State will be unable to sustain its burden of proof at trial." (*Id.*)

### B. Procedural History

On June 24, 2020, Baynard filed suit against Detective Sapienza and Assistant Prosecutor Mona for malicious prosecution, malicious use and abuse of process, false arrest, and false imprisonment under 42 U.S.C. § 1983; and for conspiracy to violate his civil rights under 42 U.S.C. § 1985. Detective Sapienza and Assistant Prosecutor Mona moved to dismiss. (D.E. Nos. 5 &

---

[3] The Court may consider the assistant prosecutor's recommendation for the same reasons the Court may consider the affidavit of probable cause and the photo array. See *supra* nn. 1 & 2.

22). In response, Baynard withdrew his § 1985 claim but otherwise contested the motions. (D.E. No. 12 at 8; D.E. No. 29 at 14).

On September 30, 2021, the Court granted the motions. (D.E. No. 43, Opinion; D.E. No. 44, Order).[4] The Court held that Assistant Prosecutor Mona was entitled to absolute prosecutorial immunity because Baynard's claims against her "concern[ed] actions [that] Mona took as the State's advocate as part of the judicial phase of a criminal prosecution." (Opinion at 6). The Court also held that Baynard failed to state claims against Detective Sapienza for malicious prosecution, false arrest, and false imprisonment because he failed to allege facts that negated probable cause to arrest—an element shared by all three claims. (*Id.* at 8–13). Finally, the Court dismissed the claim against Detective Sapienza for malicious use and abuse of process because Baynard "ha[d] not identified any process that was misused or abused." (*Id.* at 15). The Court's dismissal was without prejudice. (*Id.*).

On October 18, 2021, Baynard filed the Amended Complaint against Detective Sapienza and Assistant Prosecutor Mona, asserting § 1983 claims for malicious prosecution, malicious use and abuse of process, false arrest, and false imprisonment. (Am. Compl. ¶¶ 27–53). Detective Sapienza and Assistant Prosecutor Mona separately moved to dismiss the Amended Complaint. (D.E. Nos. 48 & 51). On December 1, 2021, the parties stipulated to dismissing Assistant Prosecutor Mona with prejudice. (D.E. No. 52). The stipulation was entered the following day. (D.E. No. 53). In his opposition to Detective Sapienza's motion, Baynard consents to dismissal of his claim for malicious use and abuse of process but otherwise opposes the motion. (D.E. No. 55 ("Opp. Br.") at 11).

---

[4]  *See Baynard v. Mona*, No. 20-7723, 2021 WL 4473154 (D.N.J. Sept. 30, 2021).

## II. LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. DISCUSSION

Baynard asserts claims of malicious prosecution, false arrest, and false imprisonment. Each claim shares one element: lack of probable cause. *See Harvard v. Cesnalis*, 973 F.3d 190, 199–203 (2020) (analyzing probable cause for claims of false arrest, false imprisonment, and malicious prosecutions); *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (same). Detective Sapienza argues that the Amended Complaint fails to negate probable cause to arrest and, moreover, that he is entitled to qualified immunity. (Opp. Br. at 7). The Court agrees and addresses both points in turn.

### A. Probable Cause

To survive a motion to dismiss, a plaintiff cannot merely plead lack of probable cause. *See Jecrois v. Sojak*, 736 F. App'x 343, 347 (3d Cir. 2018); *Strunk v. E. Coventry Twp. Police Dep't*,

7

674 F. App'x 221, 224 (3d Cir. 2016); *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 115 (3d Cir. 2016); *Sampson v. Pierro*, No. 14-5983, 2017 WL 1032517, at *3 (D.N.J. Mar. 16, 2017). Rather, the plaintiff must offer facts and circumstances plausibly suggesting that there was not probable cause to arrest. *Shaffer*, 650 F. App'x at 115.

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Harvard*, 973 F.3d at 199 (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). "Put another way, 'probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Dempsey*, 834 F.3d at 467 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). "[T]he constitutional validity of the arrest does not depend on whether the suspect actually committed any crime." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). A court must assess probable cause to arrest based on the totality of the circumstances known by the officer at the time he drafted the affidavit of probable cause. *Harvard*, 973 F.3d at 200, 202 n.4. An officer who prepares an affidavit of probable cause "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Dempsey*, 834 F.3d at 469 (quoting *Wilson*, 212 F.3d at 790). When a plaintiff's challenge to probable cause rests on an officer asserting or omitting information in an affidavit of probable cause, a court must (i) determine whether such "information was asserted or omitted . . . with at least reckless disregard for the truth"; and (ii) if so, "perform a word-by-word reconstruction of the affidavit" to determine whether the disputed information was material. *Id.* at 470.

Assuming that the Amended Complaint plausibly alleges that Detective Sapienza omitted certain information with the requisite mental state, the Court proceeds to reconstruct, word-by-

word, the affidavit of probable cause. *See Shaffer*, 650 F. App'x at 114 (assuming the same on a motion to dismiss and proceeding to the second element).

However, the Court will only reconstruct the affidavit using facts alleged in the Amended Complaint that must be accepted as true. And two factual allegations—both pled on information or belief—are not entitled to the presumption of truth. While the Federal Rules of Civil Procedure permit pleading on information and belief, in order to so plead, the plaintiff must "show[] that the requisite factual information is peculiarly within the defendant's knowledge or control"; assert more than mere "boilerplate and conclusory allegations"; and "accompany the[] legal theory with factual allegations that make the[] theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). For two factual allegations, Baynard does not satisfy these standards.

First, Baynard pleads that Detective Sapienza downloaded "'several clips'" of video surveillance near his home that, "upon information and belief, demonstrate that [he] was at home at the time of Merchant's shooting." (Am. Compl. ¶ 48). This allegation is alarming, for it suggests that Detective Sapienza deliberately arrested Baynard knowing he could not have been the shooter. *See Dennis v. City of Philadelphia*, 19 F.4th 279, 289 (3d Cir. 2021) ("[I]t [i]s axiomatic that 'those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.'" (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 296 (3d Cir. 2014))). However, Baynard has not shown that the footage is peculiarly in the possession or control of Detective Sapienza and, in fact, admits that Detective Sapienza obtained the footage from another person, Harrison Green. (Am. Compl. ¶ 48). Baynard has not

9

specified why he cannot do the same or otherwise obtain the video by other means. Accordingly, this allegation is not presumed to be true.

Second, Baynard pleads that, "[u]pon information and belief, Detective Sapienza also obtained video footage of Merchant's shooting which seriously called Merchant's identification into question." (*Id.* ¶ 49). Like the first allegation, Baynard has not shown why the footage is peculiarly in the possession or control of Detective Sapienza. Moreover, this allegation is vague and conclusory: it is not clear what Baynard means when he alleges that the footage "seriously called Merchant's identification into question." (*Id.*) This allegation is thus not entitled to the presumption of truth.[5]

The appropriate word-by-word reconstruction of the affidavit of probable cause produces the following:

> I am a Detective assigned to the Newark Police Department Shooting Response Team. I am responsible for the investigation detailed hereinafter involving a shooting incident. On 6/30/18 a male was shot in the chest, arm, and leg and was transported via privately owned automobile to Newark Beth Israel. This male was rushed into emergency surgery where he went into cardiac arrest twice during the surgery and life saving measures were performed to save his life.
>
> Surveillance video was retrieved from the area. On 7/3/18 I was able to obtain a sworn audio statement from the victim**[. At the time of the interview, the victim was still in the hospital, recovering from his injuries. During the interview, the victim was high on opioids and physically and mentally impaired from his injuries.]** ~~who~~ **[The victim]** advised me he was standing in front of 432 Leslie

---

[5] Notably, in his Amended Complaint, Baynard lists in bullet-point format several facts that "Detective Sapienza's affidavit of probable cause excluded" (Am. Compl. ¶ 63), but as Detective Sapienza points out, Baynard "does not" include allegations "regarding the surveillance video[s]" (Mov. Br. at 17). Nor does he include those facts in his opposition brief when he lists the "critical information" missing from the affidavit of probable cause. (Opp. Br. at 6). Thus, while he lodges allegations in his Amended Complaint and opposition brief concerning the surveillance videos, he does not make much of them or otherwise appear to advance his case based on them.

Separately, in light of the claims that Baynard makes concerning the footage, the State of New Jersey would have been under a duty to disclose the footage to him during his criminal prosecution pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. For all the claims Baynard makes concerning police and prosecutorial misconduct, he does not assert a *Brady* claim.

Street when a male clad in a hooded sweatshirt, walked up to him, yelled out "Yo!", took off the hood, looked at him, and discharged a handgun several times striking him multiple times. The victim stated he was transported to NBIMC where he was rushed into emergency surgery and "died" twice on the operating table. **[At the time of the shooting, it was dark out and the victim was not wearing his corrective lenses and was under the influence of opioids. The victim initially said he did not see the shooter. However, the]** ~~The~~ victim ~~also~~**[eventually]** provided a physical description of the male. **[The victim said that shooter was skinny and weighed approximately 145 pounds. The victim also said the shooter was brown.]** The victim knows where the male lives and stated he sees him outside this house everyday. The victim also knows the male drives a blue mini van ~~and recently died the tips of his dreadlocks blonde~~ however, he does not know his name. **[In addition, the victim could not indicate the length of the shooter's dreadlocks, give a full description of the shooter's face, or specify whether the shooter had facial hair or distinguishing features on his face or elsewhere.]** Detective Pisano and I then drove pass 315 Wainwright which is the residence identified by the victim where the suspect lives. Parked in the driveway was a Blue mini-van. The license plate was recorded. Upon returning to our office, the license plate was ran and the vehicle was checked for moving violations. One such male was found to have numerous moving violations issued to him in this vehicle. This male, Azaiah Baynard was then placed in a photo array. **[The photo array consisted of four men with brown skin complexion and two Black men, and five of the men wore dreadlocks.]** A photo array was then shown to the victim who positively identified Baynard as the male who shot him. **[In contrast to the victim's description, Baynard weighs approximately 180 pounds and is Black.]**

**[At the hospital, I interviewed two eyewitnesses to the shooting. One witness denied being present at the shooting and denied knowing Merchant, and he stated that he drove Merchant to the hospital only after seeing him injured. However, this witness was present at the shooting and is friends with Merchant. The other witness said he was unable to identify the shooter.]**

Additional video surveillance was obtained from Wainwright Street which shows the same mini van which Baynard is known to operate driving down the block a few minutes after the shooting.

It should be noted I was able to confirm with the Doctors of Newark Beth Israel that the victim did in fact go into cardiac arrest several times during his surgery.

11

**[Merchant has indicated that he does not want his identification
to be used in court and does not want to testify against Baynard.]**

(Aff. of Probable Cause (emphasis, additions, and alterations added)).[6]

Detective Sapienza argues that the reconstructed affidavit does not negate probable cause to arrest. (Mov. Br. at 31). In opposition, Baynard argues there was no probable cause to arrest him because Merchant's identification was wholly unreliable and was the only evidence against him. (Opp. Br. at 8). In particular, according to Baynard, Merchant's identification was unreliable because (i) he knew Baynard from before the shooting; (ii) he was a known opioid user and was under the influence during the shooting, initial interview, and later identification; (iii) two other eyewitnesses could not identify the shooter; (iv) he was not wearing his corrective lenses, and it was dark outside at the time of the shooting; (v) he initially said he did not see the shooter and later said he could not detail the shooter's face; and (vi) he indicated that he would not testify in court. (Opp. Br. at 9–10). The Court agrees with Detective Sapienza.

The Court begins with the presumption that there was probable cause because Merchant, the victim, identified Baynard as the shooter. "Statements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists." *Dempsey*, 834 F.3d at 477–48. "When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Id.* at 448 (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)).

---

[6] Though Detective Sapienza did conduct a word-by-word reconstruction, Baynard did not, even after the Court explained that it is a requirement in the Third Circuit. (Opinion at 10–11 (citing *Dempsey*, 834 F.3d at 470; *Jecrois v. Sojak*, 736 F. App'x 343, 347 (3d Cir. 2018)). The above reconstructed affidavit is based on the Court's independent review of the allegations in the Amended Complaint and the parties' arguments.

Although Baynard alleges some unreliability in the identification, which is reflected in the reconstructed affidavit, "some unreliability or exculpatory evidence will not fatally undermine probable cause otherwise established." *Id.* (cleaned up). True, Merchant's identification is less reliable in view of the nighttime conditions of the shooting and his intoxication during the shooting and investigation. Also true, the identification is less reliable because other witnesses could not corroborate it, and because Merchant initially said he did not see the shooter and then later said he could not detail the shooter's face or other personal characteristics.

But those facts are not fatal,[7] for probable cause must be assessed under the totality of the circumstances. The Third Circuit has upheld probable cause "where a victim identified the arrestee in a photo array," just as Merchant did here, "but other evidence suggested the perpetrator was significantly taller than the arrestee, a different victim did not identify the arrestee, and another witness claimed to have seen the arrestee at the time of the crime." *Id.* (citing *Wilson*, 212 F.3d at 791–92). Likewise, the Third Circuit has upheld probable cause to arrest "where a victim first identified a different person as her assailant before changing her story to identify the arrestee." *Id.* (citing *Sharrar*, 128 F.3d at 818–19).

Though not immediately during the initial interview, Merchant eventually identified Baynard—a person with whom Merchant was previously familiar. Contrary to Baynard's claim, Merchant's previous familiarity with Baynard *enhances* the reliability of his identification, and it is not plausible to suggest otherwise. *See United States v. Dennis*, No. 17-0246, 2018 WL

---

[7] *See Wilson*, 212 F.3d at 791 (upholding probable cause even though the victim's "testimony should be viewed with some skepticism because her identification of Wilson was inherently incompatible with her description of the robber"); *Norales v. Acevedo*, No. 20-2044, 2021 WL 739111, at *6 (S.D.N.Y. Feb. 24, 2021) ("An officer's knowledge that a witness to a crime may have lied in the past, even about the person who is arrested, and that the witness was under the influence of drugs or alcohol at the time of the crime, does not mean that the officer cannot rely on the witness in determining whether there is probable cause to make an arrest."); *United States v. McCottrell*, No. 18-1006, 2020 WL 2559650, at *5 (E.D. Mo. Mar. 18, 2020) ("Even if C.C. was under the influence of heroin during her initial statement, text messages and toll information in C.C.'s phone corroborated her statement about her contact with T."), *report and recommendation adopted*, 2020 WL 2557030 (E.D. Mo. May 20, 2020).

6266809, at *6 & n.41 (M.D. Pa. Nov. 30, 2018) (collecting cases); *United States v. Veloz*, 109 F. Supp. 3d 305, 312 (D. Mass. 2015) ("It is uniformly held by state and federal courts, that where a witness is shown to have had prior familiarity with a defendant, a due process hearing need not be held, as no amount of police suggestion is likely to have influenced the witness's identification."), *aff'd*, 948 F.3d 418 (1st Cir. 2020). Moreover, Merchant pointed out Baynard's address. And as outlined in the reconstructed affidavit of probable cause, and without objection from Baynard, the police corroborated some of Merchant's statements, rendering his statements more reliable than a typical victim. *See Bridges*, 809 F. App'x at 72 (affirming dismissal of Fourth Amendment claim on motion to dismiss for failure to negate probable cause supporting a search warrant, which was based on a confidential informant, where the "affidavit provided corroborating evidence"). Indeed, the police went to the address provided by Merchant and observed a blue minivan parked in the driveway, discovered that the blue minivan was linked to Baynard, and uncovered surveillance footage showing the same blue minivan in the area of the shooting and around Baynard's home just minutes after the shooting.

Baynard also takes issue with what he claims were unduly suggestive investigative procedures. But the Amended Complaint hardly alleges undue suggestibility and, to the extent it does, those allegations are contradicted by two documents of which the Court can take judicial notice. See *supra* note 2.

First, Baynard accuses Detective Sapienza of feeding information to Merchant—namely, that the shooter wore a hoodie and dreadlocks. (Opp. Br. at 2–3). However, that information does not reasonably render the investigation unduly suggestion. Indeed, a hoodie is common apparel, and five of the six people in the photo array shown to Merchant wore dreadlocks. (Photo Array at 6). Still, Merchant chose Baynard out of the array.

Second, Baynard accuses Detective Sapienza of asking questions until satisfied with the answers. (Opp. Br. at 2–4). But the Amended Complaint, at most, outlines routine interview techniques of a victim who suffered a traumatic event. Baynard cites no authority for the proposition that police cannot ask a victim follow-up questions.

Third, Baynard claims that the photo array effectively singled him out as the shooter by showing no other person with dreadlocks at chin length or with the appropriate height description. (Opp. Br. at 5). But the photo array did not show any suspect's height. (Photo Display at 6). And as found by the Superior Court of New Jersey, with respect to "length of the hair, . . . no one stands out." (Wade Hearing at 10:7–14). Moreover, the photo of Baynard shows him wearing dreadlocks at *shoulder* length, not at chin length. (Photo Array at 6).

Finally, Baynard claims that the photo array showed only two Black men—him and another. (Opp. Br. at 5). But in light of the circumstances, that fact does not render the identification unduly suggestive. In fact, Merchant described Baynard as having a brown skin complexion in the initial interview, so there was nothing unduly suggestive about using a photo array with Baynard as one of two Black men. Moreover, Merchant still identified Baynard—the only person in the array who, as far as the Court can tell, lives at the house previously identified by Merchant and who drove a blue minivan.

For the above reasons, the Court holds that the Amended Complaint fails to negate probable cause to arrest.

**B.     Qualified Immunity**

Detective Sapienza also argues he is entitled to qualified immunity. (Mov. Br. at 36–38). "Qualified immunity 'gives ample room for mistaken judgments' by shielding 'all but the plainly incompetent or those who knowingly violate the law.'" *Olson v. Ako*, 724 F. App'x 160, 164 (3d

Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)). "This accommodation recognizes our societal interest in law enforcement's pursuit of investigations unconstrained by the constant fear of being sued." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). "Officers are entitled 'not to stand trial or face the other burdens of litigation' unless it can be shown that (1) they violated a statutory or constitutional right and (2) the right was clearly established at the time of the conduct." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "The 'clearly established' element means that the legal principle at issue must 'clearly prohibit the officer's conduct in the particular circumstances before him.'" *Burdsall v. W. Whiteland Twp.*, No. 18-3188, 2021 WL 3562845, at *6 (E.D. Pa. Aug. 11, 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

In the context of the Fourth Amendment, specificity takes particular importance because probable cause is an imprecise standard and therefore leaves officers unable "to know how the general standard of probable cause applies in 'the precise situation encountered.'" *Wesby*, 138 S. Ct. at 590 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017)). Accordingly, the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Id.* (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam)). While a case need not be directly on point, "existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). There might be "the rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," but "a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." *Id.* (cleaned up).

Because the Amended Complaint fails to sufficiently plead a violation of a constitutional right, it follows that the Amended Complaint does not sufficiently plead the violation of a clearly established right. Even still, Baynard has not identified, nor has the Court uncovered, existing precedent clearly establishing that his arrest was unlawful. Instead, Baynard repeats his probable cause arguments and claims that it was objectively unreasonable for Detective Sapienza to rely on the arrest warrant and affidavit of probable cause. (Opp. Br. at 11–12). But this is the type of imprecision the Supreme Court warned about in *Wesby*, 138 S. Ct. at 590. Accordingly, the law does not clearly establish that the particular circumstances of this case render Baynard's arrest unlawful. Detective Sapienza is therefore, at a minimum, entitled to qualified immunity.

## IV.   CONCLUSION

Based on the foregoing, Detective Sapienza's motion to dismiss (D.E. No. 51) is GRANTED. The Amended Complaint is dismissed *without prejudice*.[8]

Dated: June 10, 2022

Hon. Esther Salas, U.S.D.J.

---

[8] The Amended Complaint is dismissed without prejudice only in view of the alarming allegation that Detective Sapienza may have been in possession of a video demonstrating that Baynard was not the shooter. (Am. Compl. ¶ 48). Indeed, Baynard's claims might be able to proceed if he sufficiently pleads that fact on "information and belief" or if he drops the "information and belief" caveat. Baynard is permitted one last amendment, and Baynard's counsel is reminded of his duties under Federal Rule of Civil Procedure 11.